**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**THOMAS HART, LISA HART, KEVIN**
**MCDONALD, SARAH MCDONALD,**
**1667 WESTERN AVENUE, LLC, RED-KAP**
**SALES, INC.,**

                                        **Plaintiffs,**

          **vs.**                                                    **1:20-CV-475**
                                                                     **(MAD/DJS)**

**TOWN OF GUILDERLAND, PLANNING**
**BOARD OF GUILDERLAND, ZONING BOARD**
**OF APPEALS OF GUILDERLAND, PYRAMID**
**MANAGEMENT GROUP, LLC, RAPP ROAD**
**DEVELOPMENT, LLC, CROSSGATES**
**RELEASECO, LLC,**

                                        **Defendants.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**JAMES BACON, ESQ.**                      **JAMES BRYAN BACON, I, ESQ.**
PO Box 575
New Paltz, New York 12561
Attorneys for Plaintiff

**MELITA LAW FIRM**                        **JAMES P. MELITA, JR., ESQ.**
2390 Western Avenue
Suite 107
Guilderland, New York 12084
Attorneys for the Town Defendants

**WHITEMAN, OSTERMANN LAW**               **GABRIELLA LEVINE, ESQ.**
**FIRM – ALBANY OFFICE**                  **ROBERT S. ROSBOROUGH, IV, ESQ.**
One Commerce Plaza                         **ROBERT L. SWEENEY, ESQ.**
Suite 1900
Albany, New York 12260
Attorneys for the Corporate Defendants

**Mae A. D'Agostino, U.S. District Judge:**

                **MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiffs commenced this action alleging various violations of state and federal environment laws and their constitutional rights against Defendants Crossgates Releaseco, LLC, Pyramid Management Group, LLC, Rapp Road Development, LLC, ("Corporate Defendants") and Defendants Town of Guilderland, Planning Board of Guilderland, and Zoning Board of Appeals of Guilderland ("Municipal Defendants").  *See* Dkt. No. 1 at 1.  The complaint alleges violations of the Clean Water Act ("CWA"), the Endangered Species Act ("ESA"), the New York State Environmental Quality Review Act ("SEQRA"), and Plaintiffs' substantive due process rights. *See id.* at ¶¶ 1, 117-202.  On April 25, 2020, Plaintiffs filed a motion for a preliminary injunction seeking an order enjoining any further tree cutting or site excavation on the sites at issue, enjoining the lead agency from further SEQRA review, and requiring the re-establishment of a lead agency.  *See* Dkt. No. 2-1 at 8.  Based on the following reasons, the Court finds that Plaintiffs has failed to establish likelihood of success on the merits.  Accordingly, Plaintiffs' motion is denied.

## II. BACKGROUND

Plaintiffs' claims stem from the Corporate Defendants' cutting of trees in a large parcel of land near Plaintiffs' homes and businesses in the Town of Guilderland.  *See* Dkt. No. 1 at ¶ 107. The same plot of land, in addition to two others in the nearby area, have been the subject of a contested process through which the Corporate Defendants hope to develop the properties into various commercial and residential spaces.  *See id.* at ¶¶ 18-106.

The Corporate Defendants are seeking permits from the Municipal Defendants to develop parcels of land known as Site One, Site Two, and Site Three, which together comprise about forty-nine acres in the area surrounding Crossgates Mall.  *See* Dkt. No. 1 at ¶ 69.  The Corporate

Defendants have completed plans to develop the sites at issue into large scale residential and commercial projects. *See id.* at ¶ 46. In December 2018, The Corporate Defendants filed land use plans for Site One which it proposed would be used primarily as a residential project. *See id.* at ¶¶ 54-55. A SEQRA Environmental Assessment Form ("EAF") was filed for the proposed project listing the purpose as a residential development. *See id.* at ¶ 59. On February 12, 2019, the Planning Board circulated its intent to be the lead agency conducting the SEQRA review. *See id.* at ¶ 61. On July 10, 2019, the Planning Board established itself as the lead agency for the SEQRA review. *See id.* at ¶ 64.

The proposed development continued to be referred to as "a 222 unit apartment/townhome development on 19.68 acres" until the Planning Board issued its notice of a positive declaration. *See id.* at ¶ 68. At that point, the project included the development of Sites Two and Three, which would include a "retail and fueling facility" on Site Two and other development on Site Three. *See id.* The Planning Board then posted an environmental impact statement concept plan on its website and extended the comment period until October 2019. *See id.* at ¶ 72. On November 15, 2019, the Corporate Defendants filed an application with the Zoning Board of Appeals for a special use permit for the development of a Costco on Site Two. *See id.* at ¶ 79. On October 23, 2019, the Planning Board accepted the final scope for the draft environmental impact statement. *See id.* at ¶ 72. The Town determined that the draft environmental impact statement was complete on February 7, 2020, and set a public hearing for March 11, 2020. *See id.* at ¶ 92. However, in light of the COVID-19 pandemic, the hearing was postponed until May 2020 and the comment period was extended until May 26, 2020. *See id.* at ¶ 93.

On the morning of March 26, 2020, the Corporate Defendants clear cut more than two acres of forest on Site Two. *See id.* at ¶¶ 107, 109. Defendants claim that the Corporate

Defendants consulted with the Municipal Defendants to determine that no permit was required before they cut the trees on Site Two.  *See* Dkt. No. 27 at 13.  Following the clear cutting, the Town issued a cease and desist order.  *See id.* at ¶ 112.  Plaintiffs allege that the site which was clear cut could support a number of federal and state-listed endangered, threatened, and rare species.  *See* Dkt. No. 1 at ¶ 27.  The Corporate Defendants claim to have cut down the trees to "ensure there was going to be no impact" on the potential bat habitat.  *See* Transcript of Pre-Motion Telephone Conference ("Tr.") at 8-9.  They claim that "they were taking the best course to protect any potential habitat or endangered or threatened species" by cutting down the trees.  *See id.* at 9.

### III. DISCUSSION

**A.      Standard of Review**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Moore v. Consol. Edison Co.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).  "A decision to grant or deny a preliminary injunction is committed to the discretion of the district court."  *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir. 1994) (citation omitted).

A party seeking a preliminary injunction must establish "'a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party.'"  *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 2d 107, 108 (D. Conn. 2003) (quoting *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003)).

The Supreme Court has observed that the decision of whether to award preliminary injunctive relief is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Consonant with this view, the Second Circuit has held that a district court may consider hearsay evidence when deciding whether to grant preliminary injunctive relief. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010). Therefore, the strict standards for affidavits under the Federal Rules of Evidence and in support of summary judgment under Rule 56(c)(4) of the Federal Rules of Civil Procedure requiring that an affidavit be made on personal knowledge are not expressly applicable to affidavits in support of preliminary injunctions. *See Mullins v. City of New York*, 634 F. Supp. 2d 373, 384 (S.D.N.Y. 2009) (citations omitted). Nevertheless, courts have wide discretion to assess the affidavit's credibility and generally consider affidavits made on information and belief to be insufficient for a preliminary injunction. *See* 11A Charles Alan Wright et al., Federal Practice and Procedure § 2949 (2d ed. 1995); *Mullins*, 634 F. Supp. 2d at 373, 385, 390 n.115 (declining to fully credit the "defendants' hearsay affidavit" and noting that while the court "may consider hearsay evidence in a preliminary injunction hearing . . . , a court may weigh evidence based on whether such evidence would be admissible under the Federal Rules of Evidence").

Even if the plaintiff demonstrates irreparable harm and a likelihood of success on the merits the remedy of preliminary injunctive relief may still be withheld if equity so requires. "An award of an injunction is not something a plaintiff is entitled to as a matter of right, but rather it is an equitable remedy issued by a trial court, within the broad bounds of its discretion, after it weighs the potential benefits and harm to be incurred by the parties from the granting or denying of such relief." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999) (citation omitted).

**B.      Likelihood of Success on the Merits**

As mentioned above, Plaintiffs' complaint includes causes of action stemming from Defendants' alleged violation of the Clean Waters Act, the Endangered Species Act, and Plaintiffs' Due Process rights.  *See* Dkt. No. 1 at 18-23.  Initially, the Court notes, and Plaintiffs admit, that they do not have viable claims under the CWA and the ESA because they have failed to comply with procedural pre-requisites.[1]  *See* Tr. at 3.  Instead, Plaintiffs argue that Defendants' alleged violation of these statutes constitutes fundamental procedural irregularities that are actionable violations of Plaintiffs' due process rights which may be brought as a Section 1983 action.  *See id.*  However, Plaintiffs' due process claim cannot be based on alleged violations of the CWA and the ESA.  *Elliot v. City of New York*, No. 06-CV-296, 2008 WL 4178187, *14 (S.D.N.Y. Sept. 8, 2008) (quoting *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) (other citations omitted) ("Therefore, as is the case with the CWA, the remedial devices provided for by the ESA are sufficiently comprehensive 'to demonstrate congressional intent to preclude the remedy of suits under [Section] 1983'").  Thus, Plaintiffs' only remaining federal claim is their Section 1983 substantive due process claim based on Defendants alleged failure to comply with SEQRA requirements.  For the reasons described below, Plaintiffs' due process claim will likely fail because it is not ripe and Plaintiffs have failed to demonstrate the requirements of a substantive due process claim.

*1. Section 1983*

---

[1] Both the CWA and the ESA allow for citizen suits through which individuals can enjoin another person or company who is alleged to be in violation of any provision of the respective statutes.  *See* 16 U.S.C. § 1540(g)(1)(A); 33 U.S.C. § 1362(5).  However, no action may be commenced under either title prior to sixty days after service of notice of the alleged violation to the alleged violator and various agencies.  *See* 16 U.S.C. § 1540(g)(2)(A); 33 U.S.C. § 1365(b)(1)(a).  No such notice has been sent in this case.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).   Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained.   *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).

It is important to note that state action is an essential element of any Section 1983 claim. *See Gentile v. Republic Tobacco Co.*, No. 95-CV-1500, 1995 WL 743719, *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted)).   Likewise, Section 1983 does not reach the purely private conduct of a private person. *See Puletti v. Patel*, No. 05-CV-2293, 2006 WL 2010809, *6 (E.D.N.Y. July 14, 2006) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)); *see also Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 454 (N.D.N.Y. 2006).   Parties may not be held liable under Section 1983 unless it can be established that they have acted under the color of state law.   *See Basile v. Connolly*, 538 Fed. Appx. 5, *7 (2d Cir. 2013).

Here, it is unclear whether Plaintiffs' due process claim has been brought against the Corporate Defendants in addition to the Municipal Defendants.   *See* Dkt. No. 1 at ¶¶ 167-202. However, there is no allegation that the Corporate Defendants were acting under the color of state law.   *See id.*   Therefore, Plaintiffs' due process claim against the Corporate Defendants will fail.

### 2. Substantive Due Process Claim

"'Substantive due process claims concern limitations on governmental conduct toward an individual regardless of the procedural protections.'"   *Parsons v. Pond*, 126 F. Supp. 2d 205, 215

(D. Conn. 2000) (quotation omitted).  "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that incorrect or ill-advised[.]"  *Id.* at 215 (internal alterations and quotations omitted).

### 3. Ripeness

As a jurisdictional prerequisite, a federal court may only entertain a plaintiff's claim if the claim is ripe for adjudication.  *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).  In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187-94 (1985), the Supreme Court created the following two-pronged test to determine ripeness of a Fifth Amendment takings claim: (1) the government agency must have issued a "final decision" on the matter and (2) the plaintiff must have sought just compensation through state procedures before resorting to federal court.[2]  In land use cases, these requirements have been extended to Section 1983 due process claims.  *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002) (citations omitted).  "[U]nder controlling Second Circuit authority, a plaintiff bringing a land-use substantive due process claim against a defendant challenging his or her conduct under the arbitrary and capricious standard need only satisfy the first *Williamson* ripeness prong analyzing whether the defendant has rendered a final decision."  *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, *29 (S.D.N.Y. July 16, 2008) (citing *Dougherty,* 282 F.3d at 88-89 (other citation omitted).

---

[2] In *Knick v. Township of Scott, Pennslyvania*, 139 S. Ct. 2162, 2167 (2019), the Supreme Court abrogated the second *Williamson* requirement in the Fifth Amendment takings context, holding that "the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs[.]"  However, it is unclear whether the Court's holding in *Knick* extends to substantive due process claims.  Regardless, the final determination requirement remains.

"The final decision requirement ensures that, when analyzing a Section 1983 challenge to the constitutionality of a local land use decision, a federal court has 'the benefit of a fully developed record, a precise demonstration of how local regulations would be applied to the particular property, and knowledge of whether a variance or approval of alternative plans could provide the relief the land owner seeks.'" *Id.* at *4 (quotation and other citation omitted). "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury[.]" *Williamson*, 472 U.S. at 193.

Even just a cursory examination of the relief Plaintiffs seek supports the conclusion that this issue is not ripe for adjudication. Plaintiffs seek an order enjoining construction activities on the sites at issue, preventing the current lead agency's SEQRA review, and requiring the re-establishment of another lead agency to finish the pending SEQRA review. *See* Dkt. No. 2-1 at 27. The only immediate harm Plaintiffs faced was the cutting of additional trees, which is no longer a threat due to the issuance of a cease and desist order by the Municipal Defendants. Now, Plaintiffs ask the Court to interfere with an ongoing SEQRA review process so that the Court can order the removal of the current lead agency, who Plaintiffs perceive as biased, despite the fact that they have yet to issue a final decision. This is exactly the type of outcome that the ripeness requirement seeks to avoid in these types of cases. *See Zahra v. Town of Southold*, 48 F.3d 674, 679-80 (2d Cir. 1995) ("[W]e are mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by the Circuit's many local legislative and administrative agencies") (quotation omitted).

Plaintiffs do not contest that there has yet to be a final determination, but cite *Osborne*, in arguing that ripeness may exist absent a final decision in land use cases where there is an "immediately sustained and concretely felt injury" arising from the absence of the final decision.

9

*See* Dkt. No. 2-1 at 26.  However, in *Osborne*, although the court considered such an exception, it ultimately found that it was not consistent with Second Circuit case law and chose not to endorse such an exception.[3]  *See Osborne*, 2009 WL 884697 at 30-31.

The "immediately sustained and concretely felt injury" exception was derived from *dicta* in *Adrian v. Town of Yorktown*, 210 Fed. Appx. 131, 133 n.2 (2d Cir. 2006).  In *Adrian*, the Second Circuit recognized such an exception when the injury alleged was immediate and occurred in a First Amendment retaliation claim arising in the land-use context.  *See id.* (citing *Dougherty*, 282 F.3d at 90).  This *dicta*, however, directly contradicts the Second Circuit's previously published requirement of compliance with the *Williamson* ripeness test in substantive due process claims.  *See Southview Associates, Ltd. v. Bongatz*, 980 F.2d 84, 96 (2d Cir. 1992) (holding that a substantive due process claim is "premature 'until a final decision is made as to how the regulations will be applied'" to the property at issues).  Therefore, the Court finds that Plaintiffs' due process claim is subject to the *Williamson* finality requirement.  Here, it is undisputed that there has not been a final determination by the government entity, thus, Plaintiffs' due process claim is not ripe.  Alternatively, Plaintiffs have failed to establish the necessary elements of a substantive due process claim.

### 4. Merits of Plaintiffs' Claim

To prevail on a substantive due process claim involving a land use issue, the plaintiff must demonstrate that he had a valid property interest and that the "defendants infringed on that property right in an arbitrary or irrational manner."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d

---

[3] The District Court later adopted that report-recommendation, noting that the claim was not ripe because there had not been a final determination by the relevant local board.  *See* 2009 WL 884697 at *4-5.  That decision was upheld by the Second Circuit.  *See Osborne v. Fernandez*, 414 Fed. Appx. 350 (2d Cir. 2011).

778, 784 (2d Cir. 2007).  "'Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is "incorrect" or "ill-advised."'"  *Catanzaro v. Weiden*, 140 F.3d 91, 95 (2d Cir. 1998) (quotation omitted).  "The Second Circuit uses a 'strict entitlement test to determine whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment.'"  *Cine SK8, Inc.*, 507 F.3d at 784 (quotation omitted).  "Cognizable due process interests may arise from two sources: from the Due Process Clause itself or from positive state law."  *Osborne*, 2009 WL 884697, at *33 (citing *Kentucky Dep't of Corrs., et al. v. Thompson*, 490 U.S. 454, 460 (1989)).

### a. Property Interest

"Because the U.S. Constitution generally does not create property interests, this court, in applying the entitlement test, looks to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine.'"  *Cine SK8, Inc.*, 507 F.3d at 784 (quotations omitted).  Generally, "the mere violation of a state law does not automatically give rise to a violation of federal constitutional rights[.]"  *Zahra*, 48 F.3d at 682 (quotation omitted).  Whether a plaintiff has a legitimate claim of entitlement to a benefit depends "primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case."  *RPI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989) (citations omitted).

Here, Plaintiffs allege that the property right at issue is "the lead agency's non-discretionary compliance with SEQRA's procedures" and the procedures under the CWA and

ESA.[4]  *See* Dkt No. 2-1 at 13-14, 18.  As to Plaintiffs' SEQRA arguments, Defendants argue that

the Due Process Clause does not protect against every conceivable type of state-created right and

does not confer any rights to enforce regulations aimed at protecting the general public.  *See* Dkt.

No. 27 at 29.  The Court need not determine whether the regulations which Defendants allegedly

violated involved any discretion because Plaintiffs have failed to prove that they "enjoyed an

'individual' entitlement in the enforcement of the regulation.'"  *Elliot*, 2008 WL 4178187, at *7.

Where a regulation creates no duties owed to the plaintiffs as individuals, plaintiffs have no

property interest in forcing compliance with those regulations.  *See id.* (collecting cases).

 "Section 1983 itself creates no substantive rights; it provides only a procedure for redress

for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.

1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (other citation omitted)).

The Supreme Court has held that, in determining whether a federal statute creates a right

enforceable through a Section 1983 action, the following factors must be considered: (1)

"Congress must have intended that the provision in question benefit the plaintiff"; (2) "the

plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and

amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must

unambiguously impose a binding obligation on the States."  *Blessing v. Freestone*, 520 U.S. 329,

340-41 (1997) (quotation omitted).  "In regard to the first factor, whether the provision in question

is intended to benefit the plaintiff ultimately depends on whether the legislature intended to vest

the plaintiff with an enforceable federal right."  *Elliot*, 2008 WL 4158187, at *7 (citing *Gonzaga

Univ. v. Doe*, 536 U.S. 273, 283 (2002)).  When seeking enforcement of a constitutional right

---

[4] As discussed above, alleged violations of the ESA and the CWA cannot serve as the
basis of a Section 1983 claim.  *Elliot*, 2008 WL 4178187, at *14.  Therefore, the Court's analysis
will be limited to the alleged violations of SEQRA.

rooted in state law, a plaintiff must still establish that the underlying state law was meant to protect their individual property interests.  *See id.* at 8.

In *West Farms Association v. State Traffic Commission*, 951 F.2d 469, 472 (2d Cir. 1991), the Second Circuit examined a due process claim arising from allegations of noncompliance with a state regulation.  In that case, the plaintiffs claimed that their property interest stemmed from the Connecticut Environmental Protection Act ("CEPA").  *See id.*  The Second Circuit explained that CEPA provides interested parties an opportunity to intervene in administrative or licensing proceedings of state agencies to alert them to alleged unreasonable environmental impacts and that the agency shall consider those in authorizing certain conduct.  *See id.*  The Second Circuit found that CEPA provides individuals the opportunity to intervene to present their views on the effect on the environment, but that this right is "purely procedural."  *See id.*  Ultimately, the Second Circuit held that the intended beneficiaries of that statute were the public in general and that "[s]uch universal benefits are not property interests protected by the Due Process Clause." *See id.*

Similarly, here, SEQRA provides a framework with which municipalities must comply in evaluating land use applications.  *See N.Y. City Coalition to End Lead Poisoning, Inc. v. Vallone*, 100 N.Y.2d 337, 347 (2003).  Throughout the SEQRA evaluation process, interested parties, such as Plaintiffs, are able to present their views on the impact of the proposed development on the environment and their individual interests.  *See id.* at 347-48.  "The [New York State] Legislature adopted SEQRA with the express intent that 'the protection and enhancement of the environment, human and community resources shall be given appropriate weight with social and economic consideration in public policy' and that SEQRA's policies, statutes and regulations should be implements 'to the fullest extent possible.'"  *Id.* at 347.  Like the statute in *West Farms*

*Association*, the intended beneficiaries of SEQRA are the public as a whole.  Therefore, SEQRA

does not confer upon Plaintiffs a property interest protected by the Due Process Clause.[5]  *See*

*Elliot*, 2008 WL 4178187, at *7 (citations omitted) ("Plaintiffs have not alleged an entitlement

owed to them as individuals rather than as members of the undifferentiated public, which leaves

them short of claiming a constitutionally-cognizable property interest).

### b. Arbitrary and Outrageous Conduct

"Substantive due process standards are violated only by conduct that is so outrageously

arbitrary as to constitute a gross abuse of governmental authority."  *Natale v. Town of Ridgefield*,

170 F.3d 258, 263 (2d Cir. 1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845

(1998) (other citations omitted)).  "In order to shock the conscience and trigger a violation of

substantive due process, official conduct must be outrageous and egregious under the

circumstances; it must be truly 'brutal and offensive to human dignity[.]'"  *Lomardi v. Whitman*,

485 F.3d 73, 81 (2d Cir. 2007) (quotations omitted).  "The Due Process Clause 'is not a guarantee

against incorrect or ill-advised [governmental] decisions.'"  *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 129 (1992) (quotation omitted).  "[C]ourts should operate from a 'presumption

that the administration of government programs is based on a rational decisionmaking process that

takes account of competing social, political, and economic forces.'"  *Lomardi*, 485 F.3d at 84

(quoting *Collins*, 503 U.S. at 128).  In *Natale*, the Second Circuit recognized that conduct could

rise to the level of arbitrary and outrageous if it was tainted with "fundamental procedural

irregularity."  *See Natale*, 170 F.3d at 262; *see also Cine SK8, Inc.*, 507 F.3d 785.  However,

---

[5] To the extent that Plaintiffs' claim could be construed as a procedural due process claim, it would fail for the same reasons.  *See Lucas v. Planning Bd. of Town of LaGrange*, 7 F. Supp. 2d 310, 324 (S.D.N.Y. 1998) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192) (other citations omitted) ("'The deprivation of a procedural right to be heard . . . is not actionable when there is no protected right at stake").

"[a]rbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." *Natale*, 170 F.3d at 262 (citations omitted).

Here, Plaintiffs allege that allowing the Corporate Defendants to cut the trees on Site Two constitutes a fundamental procedural irregularity. *See* Dkt. No. 201 at 15. Plaintiff further alleges that the Municipal Defendants committed a number of non-discretionary procedural violations. *See id.* at 15-17. However, at worst, these actions constitute incorrect procedural actions by the Municipal Defendants, and certainly are not so "brutal and offensive to human dignity" as to rise to the level of a fundamental procedural irregularity. Thus, Defendants' alleged violations of SEQRA are not arbitrary and outrageous. Accordingly, Plaintiffs' due process claim will fail.

The ripeness issue and, alternatively, Plaintiffs' failure to establish the required elements, make clear that their due process claim is likely to fail. There being no other federal claims, the Court would likely refuse to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, the Court finds that Plaintiffs have failed to demonstrate likelihood of success on the merits.

## C.    **Irreparable Harm**

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "To satisfy the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction

[it] will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)). "In order for harm to be irreparable, money damages must be unavailable or at least inadequate." *Stagliano v. Herkimer Central Sch. Dist.*, 151 F. Supp. 3d 264, 273 (N.D.N.Y. 2015).

Plaintiffs allege that they will suffer irreparable harm absent a preliminary injunction because the Corporate Defendants could cut down more trees. *See* Dkt. No. 2-1 at 22-23. Notably, a cease and desist order was issued by the Town following the original cutting of the trees. *See* Dkt. No. 2-1 at 22. Plaintiffs argue that the cease and desist order could be lifted at any time and, thus, the treat of additional cutting remains. This, however, is exactly the sort of speculative and remote injury that does not support the issuance of a preliminary injunction. There is no indication that the cease and desist order will be lifted nor has either party indicated that the Corporate Defendants have plans to cut down additional trees. Therefore, Plaintiffs have failed to demonstrate irreparable harm that is actual and imminent.

Based on the reasons described above, the Court finds that Plaintiffs have failed to establish, by a clear showing, likelihood of success on the merits and irreparable harm absent injunctive relief. Accordingly, Plaintiffs' motion is denied.

## IV. CONCLUSION

After careful review of the record, the parties' arguments, and the applicable law, the Court hereby

**ORDERS** that Plaintiffs' motion to for a preliminary injunction (Dkt. No. 2) is **DENIED**; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 1, 2020
       Albany, New York

                                   **Mae A. D'Agostino**
                                   **U.S. District Judge**