**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS HART, LISA HART, KEVIN**
**MCDONALD, SARAH MCDONALD,**
**1667 WESTERN AVENUE, LLC, RED-KAP**
**SALES, INC.,**

                                    **Plaintiffs,**

        **vs.**                                              **1:20-CV-475**
                                                             **(MAD/DJS)**

**TOWN OF GUILDERLAND, PLANNING**
**BOARD OF GUILDERLAND, ZONING BOARD**
**OF APPEALS OF GUILDERLAND, PYRAMID**
**MANAGEMENT GROUP, LLC, RAPP ROAD**
**DEVELOPMENT, LLC, CROSSGATES**
**RELEASECO, LLC,**

                                    **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**JAMES BACON, ESQ.**                     **JAMES BRYAN BACON, I, ESQ.**
P.O. Box 575
New Paltz, New York 12561
Attorneys for Plaintiff

**MELITA LAW FIRM**                       **JAMES P. MELITA, JR., ESQ.**
2390 Western Avenue
Suite 107
Guilderland, New York 12084
Attorneys for the Municipal Defendants

**WHITEMAN, OSTERMANN LAW**               **GABRIELLA LEVINE, ESQ.**
**FIRM – ALBANY OFFICE**                  **ROBERT S. ROSBOROUGH, IV, ESQ.**
One Commerce Plaza                        **ROBERT L. SWEENEY, ESQ.**
Suite 1900
Albany, New York 12260
Attorneys for the Corporate Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs commenced this action alleging various violations of state and federal environmental laws and their constitutional rights against Defendants Crossgates Releaseco, LLC, Pyramid Management Group, LLC, Rapp Road Development, LLC, ("Corporate Defendants") and Defendants Town of Guilderland, Planning Board of Guilderland, and Zoning Board of Appeals of Guilderland ("Municipal Defendants").  *See* Dkt. No. 1.  The complaint alleges violations of the Clean Water Act ("CWA"), the Endangered Species Act ("ESA"), the New York State Environmental Quality Review Act ("SEQRA"), and Plaintiffs' substantive due process rights. *See id.* at ¶¶ 1, 117-202.  On April 25, 2020, Plaintiffs filed a motion for a preliminary injunction seeking an order enjoining any further tree cutting or site excavation on the sites at issue, enjoining the lead agency from further SEQRA review, and requiring the re-establishment of a lead agency.  *See* Dkt. No. 2-1 at 8.  The Court denied Plaintiffs' motion for a preliminary injunction.  *See* Dkt. No. 30.  On May 25, 2020, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  *See* Dkt. No. 29.  For the following reasons, Defendants' motion to dismiss is granted.

## II. BACKGROUND

Plaintiffs' claims stem from the Corporate Defendants' cutting of trees in a large parcel of land near Plaintiffs' homes and businesses in the Town of Guilderland.  *See* Dkt. No. 1 at ¶ 107. The same plot of land, in addition to two others in the nearby area, have been the subject of a contested process through which the Corporate Defendants hope to develop the properties into various commercial and residential spaces.  *See id.* at ¶¶ 18-106.

The Corporate Defendants are seeking permits from the Municipal Defendants to develop parcels of land known as Site One, Site Two, and Site Three, which together comprise about

forty-nine acres in the area surrounding Crossgates Mall.  *See id.* at ¶ 69.  The Corporate

Defendants have completed plans to develop the sites at issue into large scale residential and

commercial projects.  *See id.* at ¶ 46.  In December 2018, the Corporate Defendants filed land use

plans for Site One, which it proposed would be used primarily as a residential project.  *See id.* at

¶¶ 54-55.  A SEQRA Environmental Assessment Form ("EAF") was filed for the proposed project

listing the purpose as a residential development.  *See id.* at ¶ 59.  On February 12, 2019, the

Planning Board circulated its intent to be the lead agency conducting the SEQRA review.  *See id.*

at ¶ 61.  On July 10, 2019, the Planning Board established itself as the lead agency for the SEQRA

review.  *See id.* at ¶ 64.

The proposed development continued to be referred to as "a 222 unit apartment/townhome

development on 19.68 acres" until the Planning Board issued its notice of a positive declaration.

*See id.* at ¶ 68.  At that point, the project included the development of Sites Two and Three, which

would include a "retail and fueling facility" on Site Two and other development on Site Three.

*See id.*  The Planning Board then posted an environmental impact statement concept plan on its

website and extended the comment period until October 2019.  *See id.* at ¶ 72.  On November 15,

2019, the Corporate Defendants filed an application with the Zoning Board of Appeals for a

special use permit for the development of a Costco on Site Two.  *See id.* at ¶ 79.  On October 23,

2019, the Planning Board accepted the final scope for the draft environmental impact statement.

*See id.* at ¶ 72.  The Town determined that the draft environmental impact statement was complete

on February 7, 2020, and set a public hearing for March 11, 2020.  *See id.* at ¶ 92.  However, in

light of the COVID-19 pandemic, the hearing was postponed until May 2020 and the comment

period was extended until May 26, 2020.  *See id.* at ¶ 93.

On the morning of March 26, 2020, the Corporate Defendants clear cut more than two acres of forest on Site Two.[1]  *See id.* at ¶¶ 107, 109.  Plaintiffs now allege that Kenneth Kovalchik, the Town Planner for the Town of the Guilderland, acted beyond the scope of his authority when he permitted the Corporate Defendants to clear cut on Site Two.  *See* Dkt. No. 32 at 8-9.  Specifically, Plaintiffs allege that the Corporate Defendants made Mr. Kovalchik aware of their plans to cut the trees and that they submitted a tree cutting study at the Town's request.  *See id.* at 9.  According to Plaintiffs, Mr. Kovalchik then reviewed the study, reviewed the Town Code, spoke with the Town's Stormwater Officer, and authorized the action without consulting the Planning Board.  *See id.*  Contrastingly, Defendants claim that the Corporate Defendants consulted with the Municipal Defendants, but that Mr. Koalchik determined that no permit was required before the clear cutting could begin.  *See* Dkt. No. 35 at 14.  Following the clear cutting, the Town issued a cease and desist order.  *See* Dkt. No. 1 at ¶ 112.  Plaintiffs allege that the site which was clear cut could support a number of federal and state-listed endangered, threatened, and rare species.  *See id.* at ¶ 27.

### III. DISCUSSION

**A.    Standard of Review**

*1. Rule 12(b)(1)*

"If a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations – that is, the movant presents a 'facial' attack on the pleading – then those allegations are taken as true and construed in a light most favorable to the complainant." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (quotation

---

[1] While the parties initially represented that only two acres of trees had been cut, Plaintiffs now allege that more than five acres of woodlands were cut by the Corporate Defendants.  *See* Dkt. No. 32 at 9.

and other citation omitted).  "If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction."  *Id.* (citations omitted).  "In such a case, the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true for the purposes of the motion."  *Id.* (internal citations omitted); *see also Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 546 (2d Cir. 2007) (citations omitted).  "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to factfinding by the court." *See Watkins*, 11 F.3d at 1583 (citations omitted).

Both parties are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Emp. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").  Since ripeness is a jurisdictional requirement, a motion pursuant to Rule 12(b)(1) is the proper mechanism for a defendant seeking to dismiss a declaratory judgment action on the grounds that the claims therein are not yet ripe.  *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003) (citations omitted).

### 2. Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief.""" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.    Analysis**

   *1. Claims Under the CWA and ESA*

   As mentioned above, Plaintiffs' complaint includes causes of action stemming from

Defendants' alleged violation of the Clean Waters Act, the Endangered Species Act, and Plaintiffs'

Due Process rights.  *See* Dkt. No. 1 at 18-23.  Initially, the Court notes, and Plaintiffs admit, that

they do not have viable claims under the CWA and the ESA because they have failed to comply

with procedural pre-requisites.[2]  *See* Dkt. No. 41 at 4.  Instead, Plaintiffs argue that Defendants'

alleged violation of these statutes constitutes fundamental procedural irregularities that are

actionable violations of Plaintiffs' due process rights which may be brought as a Section 1983

action.  *See id.*  However, Plaintiffs' due process claim cannot be based on alleged violations of

the CWA and the ESA.  *See Elliot v. City of New York*, No. 06-CV-296, 2008 WL 4178187, *14

(S.D.N.Y. Sept. 8, 2008) ("Therefore, as is the case with the CWA, the remedial devices provided

for by the ESA are sufficiently comprehensive 'to demonstrate congressional intent to preclude the

remedy of suits under [Section] 1983'") (quoting *Middlesex County Sewerage Authority v.

National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)) (other citations omitted).  Thus, Plaintiffs'

only remaining federal claim is their Section 1983 substantive due process claim based on

Defendants' alleged failure to comply with SEQRA requirements and their associated state law

---

   [2] Both the CWA and the ESA allow for citizen suits through which individuals can enjoin
another person or company who is alleged to be in violation of any provision of the respective
statutes.  *See* 16 U.S.C. § 1540(g)(1)(A); 33 U.S.C. § 1362(5).  However, no action may be
commenced under either title prior to sixty days after service of notice of the alleged violation to
the alleged violator and various agencies.  *See* 16 U.S.C. § 1540(g)(2)(A); 33 U.S.C. §
1365(b)(1)(a).  No such notice has been sent in this case.

claims.[3]  For the reasons described below, Plaintiffs' due process claim fails because it is not ripe and, alternatively, Plaintiffs have failed to demonstrate the requirements of a substantive due process claim.

### 2. Section 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."  *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained.  *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)).

It is important to note that state action is an essential element of any Section 1983 claim. *See Gentile v. Republic Tobacco Co.*, No. 95-CV-1500, 1995 WL 743719, *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted)).  Likewise, Section 1983 does not reach the purely private conduct of a private person. *See Puletti v. Patel*, No. 05-CV-2293, 2006 WL 2010809, *6 (E.D.N.Y. July 14, 2006) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)); *see also Willingham v. Cnty. of Albany*, 593 F. Supp. 2d 446, 454 (N.D.N.Y. 2006).  Parties may not be held liable under Section

---

[3] To the extent that Plaintiffs allegations regarding violations of SEQRA could be construed as a state law claim, such a claim has not been properly alleged.  Any such claim must be brought pursuant to New York Civil Procedure Law Article 78.  *See Gebman v. New York*, No. 07-CV-1226, 2008 WL 2433693, *3 (N.D.N.Y. June 12, 2008) (citing cases).  Plaintiffs have not brought a claim pursuant to Article 78, therefore, the Court will not construe Plaintiffs' complaint to include a state law cause of action for violation of SEQRA.

1983 unless it can be established that they have acted under the color of state law.  *See Basile v. Connolly*, 538 Fed. Appx. 5, 7 (2d Cir. 2013).

Here, it is important to note that the only Section 1983 claim that Plaintiffs seem to be pursuing is the alleged violation of their substantive due process rights.  *See* Dkt. No. 32 at 7-8. Plaintiffs admit that this claim was alleged solely against the Town of Guilderland.  *See id.* at 7 n.2.  There do not appear to be any claims brought against the Corporate Defendants.

### 3. Substantive Due Process and Ripeness

"'Substantive due process claims concern limitations on governmental conduct toward an individual regardless of the procedural protections.'"  *Parsons v. Pond*, 126 F. Supp. 2d 205, 215 (D. Conn. 2000) (quotation omitted).  "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised[.]"  *Id.* at 215 (internal alterations and quotations omitted).

As a jurisdictional prerequisite, a federal court may only entertain a plaintiff's claim if the claim is ripe for adjudication.  *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).  In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187-94 (1985), the Supreme Court created the following two-pronged test to determine ripeness of a Fifth Amendment takings claim: (1) the government agency must have issued a "final decision" on the matter and (2) the plaintiff must have sought just compensation through state procedures before resorting to federal court.[4]  In land use cases,

---

[4] In *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162, 2167 (2019), the Supreme Court abrogated the second *Williamson* requirement in the Fifth Amendment takings context, holding that "the state-litigation requirement imposes an unjustifiable burden on takings plaintiffs[.]"  However, it is unclear whether the Court's holding in *Knick* extends to substantive

(continued...)

these requirements have been extended to Section 1983 due process claims.  *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002) (citations omitted).  "[U]nder controlling Second Circuit authority, a plaintiff bringing a land-use substantive due process claim against a defendant challenging his or her conduct under the arbitrary and capricious standard need only satisfy the first *Williamson* ripeness prong analyzing whether the defendant has rendered a final decision."  *Osborne v. Fernandez*, No. 06-CV-4127, 2009 WL 884697, *29 (S.D.N.Y. July 16, 2008) (citing *Dougherty*, 282 F.3d at 88-89) (other citation omitted).  In the land use development context, a final decision requires that a development plan be "submitted, considered and rejected by the governmental entity with the power to implement zoning regulations."  *S&R Dev. Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 461 (S.D.N.Y. 2008) (citation omitted)

The final decision requirement ensures that a federal court has the benefit of a fully developed record, has knowledge of how the regulation will be applied to the particular parcel, enforces the "long-standing principle that disputes should be decided on non-constitutional grounds whenever possible", and "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."  *Id.*  (quotations omitted).  "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury[.]"  *Williamson*, 472 U.S. at 193.

Even just a cursory examination of the relief Plaintiffs seek supports the conclusion that this issue is not ripe for adjudication.  Plaintiffs seek an order enjoining construction activities on

---

[4](...continued)
due process claims.  Regardless, the final determination requirement remains.

the sites at issue, preventing the current lead agency's SEQRA review, and requiring the re-establishment of another lead agency to finish the pending SEQRA review.  *See* Dkt. No. 2-1 at 27.  Plaintiffs ask the Court to interfere with an ongoing SEQRA review process so that the Court can order the removal of the current lead agency, who Plaintiffs perceive as biased, despite the fact that they have yet to issue a final decision.  This is exactly the type of outcome that the ripeness requirement seeks to avoid in these types of cases.  *See Zahra v. Town of Southold*, 48 F.3d 674, 679-80 (2d Cir. 1995) ("[W]e are mindful of the general proscription that federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by the Circuit's many local legislative and administrative agencies") (quotation omitted).

Plaintiffs do not contest that there has yet to be a final determination, but cite *Osborne*, in arguing that ripeness may exist absent a final decision in land use cases where there is an "immediately sustained and concretely felt injury" arising from the absence of the final decision. *See* Dkt. No. 2-1 at 26.  However, in *Osborne*, although the court considered such an exception, it ultimately found that it was not consistent with Second Circuit case law and chose not to endorse such an exception.[5]  *See Osborne*, 2009 WL 884697, at *30-31.

The "immediately sustained and concretely felt injury" exception was derived from *dicta* in *Adrian v. Town of Yorktown*, 210 Fed. Appx. 131, 133 n.2 (2d Cir. 2006).  In *Adrian*, the Second Circuit recognized such an exception when the injury alleged was immediate and occurred in a First Amendment retaliation claim arising in the land-use context.  *See id.* (citing *Dougherty*, 282 F.3d at 90).  This *dicta*, however, directly contradicts the Second Circuit's previously

---

[5] The District Court later adopted that report-recommendation, noting that the claim was not ripe because there had not been a final determination by the relevant local board.  *See Osborne*, 2009 WL 884697, at *4-5.  That decision was upheld by the Second Circuit.  *See Osborne v. Fernandez*, 414 Fed. Appx. 350 (2d Cir. 2011).

published requirement of compliance with the *Williamson* ripeness test in substantive due process

claims.  *See Southview Associates, Ltd. v. Bongatz*, 980 F.2d 84, 96 (2d Cir. 1992) (holding that a

substantive due process claim is "premature 'until a final decision is made as to how the

regulations will be applied'" to the property at issues); *see also Lewis v. Carrano*, 844 F. Supp. 2d

325, 331-32 (E.D.N.Y. 2012) (finding that the exception noted in *Adrian* was dicta and contrary to

binding Second Circuit precedent).  Therefore, the Court finds that Plaintiffs' due process claim is

subject to the *Williamson* finality requirement.  Here, it is undisputed that there has not been a

final determination by the government entity, thus, Plaintiffs' due process claim is not ripe.

Now, Plaintiffs argue that this action is ripe because of the "harm caused to the

administrative process which ultimately will allow the taking of a portion of the McDonald's

property."  *See* Dkt. No. 32 at 28.  As discussed above, the cutting of trees does not render this

action ripe.  As to Plaintiffs' Takings argument, their complaint does not include a claim pursuant

to the Fifth Amendment Takings Clause, nor has there actually been a taking at this point.

Plaintiffs argue only that the McDonald's *could* lose a portion of their property in the future.[6]  *See*

*id.*  Clearly, any claim based on the alleged future taking of a portion of the McDonald's property

is not ripe.  Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is

granted.

### 4. Merits of Plaintiffs' Claim

To prevail on a substantive due process claim involving a land use issue, the plaintiff must

demonstrate that he had a valid property interest and that the "defendants infringed on that

property right in an arbitrary or irrational manner."  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d

---

[6] Defendants dispute the veracity of this claim.  *See* Dkt. No. 35 at 7-8.  However, regardless of whether the relocation of the Westmere cul-de-sac would result in the taking of a portion of the McDonald's property, such a taking has not yet occurred.

778, 784 (2d Cir. 2007).  "'Substantive due process protects individuals against government action

that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against

government action that is "incorrect" or "ill-advised."'"  *Catanzaro v. Weiden*, 140 F.3d 91, 95 (2d

Cir. 1998) (quotation omitted).  "The Second Circuit uses a 'strict entitlement test to determine

whether a party's interest in land-use regulation is protectible under the Fourteenth Amendment.'"

*Cine SK8, Inc.*, 507 F.3d at 784 (quotation omitted).  "Cognizable due process interests may arise

from two sources: from the Due Process Clause itself or from positive state law."  *Osborne*, 2009

WL 884697, at *33 (citing *Kentucky Dep't of Corrs., et al. v. Thompson*, 490 U.S. 454, 460

(1989)).

### a. Property Interest

"Because the U.S. Constitution generally does not create property interests, this court, in

applying the entitlement test, looks to 'existing rules or understandings that stem from an

independent source such as state law to determine whether a claimed property right rises to the

level of a right entitled to protection under the substantive due process doctrine.'"  *Cine SK8, Inc.*,

507 F.3d at 784 (quotations omitted).  Generally, "the mere violation of a state law does not

automatically give rise to a violation of federal constitutional rights[.]"  *Zahra*, 48 F.3d at 682

(quotation omitted).  Whether a plaintiff has a legitimate claim of entitlement to a benefit depends

"primarily on the degree of discretion enjoyed by the issuing authority, not the estimated

probability that the authority will act favorably in a particular case."  *RPI Realty Corp. v.

Incorporated Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1989) (citations omitted).

Here, Plaintiffs allege that the property right at issue is "the lead agency's non-

discretionary compliance with SEQRA's procedures" and the procedures under the CWA and

ESA.[7]  *See* Dkt. No. 2-1 at 13-14, 18.  In essence, Plaintiffs argue that SEQRA creates actionable property interests.  *See* Dkt. No. 32 at 19-20.  Defendants correctly argue that the Due Process Clause does not protect against every conceivable type of state-created right and does not confer any rights to enforce regulations aimed at protecting the general public.  *See* Dkt. No. 27 at 29. The Court need not determine whether the regulations which Defendants allegedly violated involved any discretion because Plaintiffs have failed to prove that they "enjoyed an 'individual' entitlement in the enforcement of the regulation.'"  *Elliot*, 2008 WL 4178187, at *7.  Where a regulation creates no duties owed to the plaintiffs as individuals, plaintiffs have no property interest in forcing compliance with those regulations.  *See id.* (collecting cases).

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)) (other citation omitted). The Supreme Court has held that, in determining whether a federal statute creates a right enforceable through a Section 1983 action, the following factors must be considered: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States."  *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (quotation omitted).  "In regard to the first factor, whether the provision in question is intended to benefit the plaintiff ultimately depends on whether the legislature intended to vest the plaintiff with an enforceable federal right."  *Elliot*, 2008 WL 4158187, at *7 (citing *Gonzaga*

---

[7] As discussed above, alleged violations of the ESA and the CWA cannot serve as the basis of a Section 1983 claim.  *Elliot*, 2008 WL 4178187, at *14.  Therefore, the Court's analysis will be limited to the alleged violations of SEQRA.

*Univ. v. Doe*, 536 U.S. 273, 283 (2002)).  When seeking enforcement of a constitutional right rooted in state law, a plaintiff must still establish that the underlying state law was meant to protect his or her individual property interests.  *See id.* at *8.

In *West Farms Association v. State Traffic Commission*, 951 F.2d 469, 472 (2d Cir. 1991), the Second Circuit examined a due process claim arising from allegations of noncompliance with a state regulation.  In that case, the plaintiffs claimed that their property interest stemmed from the Connecticut Environmental Protection Act ("CEPA").  *See id.*  The Second Circuit explained that CEPA provides interested parties an opportunity to intervene in administrative or licensing proceedings of state agencies to alert them to alleged unreasonable environmental impacts and that the agency shall consider those in authorizing certain conduct.  *See id.*  The Second Circuit found that CEPA provides individuals the opportunity to intervene to present their views on the effect on the environment, but that this right is "purely procedural."  *Id.*  Ultimately, the Second Circuit held that the intended beneficiaries of that statute were the public in general and that "[s]uch universal benefits are not property interests protected by the Due Process Clause."  *Id.*

Similarly, here, SEQRA provides a framework with which municipalities must comply in evaluating land use applications.  *See N.Y. City Coalition to End Lead Poisoning, Inc. v. Vallone*, 100 N.Y.2d 337, 347 (2003).  Throughout the SEQRA evaluation process, interested parties, such as Plaintiffs, are able to present their views on the impact of the proposed development on the environment and their individual interests.  *See id.* at 347-48.  "The [New York State] Legislature adopted SEQRA with the express intent that 'the protection and enhancement of the environment, human and community resources shall be given appropriate weight with social and economic consideration in public policy' and that SEQRA's policies, statutes and regulations should be implemented 'to the fullest extent possible.'"  *Id.* at 347.  Like the statute in *West Farms*

*Association*, the intended beneficiaries of SEQRA are the public as a whole.  Therefore, SEQRA does not confer upon Plaintiffs a property interest protected by the Due Process Clause.[8]  *See Elliot*, 2008 WL 4178187, at *7 ("Plaintiffs have not alleged an entitlement owed to them as individuals rather than as members of the undifferentiated public, which leaves them short of claiming a constitutionally-cognizable property interest") (citations omitted).

Alternatively, Plaintiffs argue that they have a fundamental right to the use and enjoyment of their properties and that the Municipal Defendants' actions have interfered with that right.  *See* Dkt. No. 32 at 19.  Plaintiffs allege that they can now hear the noise of traffic and see headlights from Western Avenue as a result of the tree cutting.  *See* Dkt. No. 1-38 at ¶¶ 24-25; Dkt. No. 1-41 at ¶ 18.  Plaintiffs allege that they will be negatively affected by nuisance levels of noise and dust from any future development on Site Three.  *See* Dkt. No. 32 at 12.  All of these consequences are the result of the Corporate Defendants' actions, not any action by the Municipal Defendants.  If Plaintiffs wished to seek damages for the nuisances described, they could have resorted to a private nuisance claim against the Corporate Defendants.

Plaintiffs also argue that the Municipal Defendants' misconduct will result in the taking of a portion of the McDonalds' property.  *See* Dkt. No. 32 at 12.  Although Plaintiffs argue that the Municipal Defendants' actions will result in the taking of a portion of the McDonalds' land, seemingly invoking the Takings Clause of the Fifth Amendment, this argument is made only in an attempt to establish that Plaintiffs have a valid property interest for the purposes of their Due Process claim.  *See* Dkt. No. 32 at 11-12.

---

[8] To the extent that Plaintiffs' claim could be construed as a procedural due process claim, it fails for the same reasons.  *See Lucas v. Planning Bd. of Town of LaGrange*, 7 F. Supp. 2d 310, 324 (S.D.N.Y. 1998) ("'The deprivation of a procedural right to be heard . . . is not actionable when there is no protected right at stake") (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994)) (other citations omitted).

In *Albright v. Oliver*, 510 U.S. 266, 274 (1994), the Supreme Court held that where "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Here, there is an "explicit textual source of constitutional protection" upon which Plaintiffs may rely. The Fifth Amendment expressly protects against takings of property for public use without just compensation. However, Plaintiffs have not alleged a violation of the Takings Clause, and instead argue that the alleged taking of a portion of the McDonalds' property violates their due process rights. *See* Dkt. No. 32 at 11-12. Any such claim is appropriately pursued under the Takings Clause, not as a substantive due process claim. Accordingly, the Court finds that Plaintiffs have failed to demonstrate that they have a property interest upon which their substantive due process claim could rest.

### b. Arbitrary and Outrageous Conduct

"Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)) (other citations omitted). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity[.]'" *Lomardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (quotations omitted). "The Due Process Clause 'is not a guarantee against incorrect or ill-advised [governmental] decisions.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992) (quotation omitted). "[C]ourts should operate from a 'presumption that the administration of government programs is based on a rational decisionmaking process that

takes account of competing social, political, and economic forces.'" *Lomardi*, 485 F.3d at 84 (quoting *Collins*, 503 U.S. at 128).

In *Natale*, the Second Circuit recognized that conduct could rise to the level of arbitrary and outrageous if it was tainted with "fundamental procedural irregularity." *Natale*, 170 F.3d at 262; *see also Cine SK8, Inc.*, 507 F.3d at 785.  However, "[a]rbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." *Natale*, 170 F.3d at 262 (citations omitted).

Initially, Plaintiffs alleged that by allowing the Corporate Defendants to cut the trees on Site Two, the Municipal Defendants engaged in fundamental procedural irregularity.  *See* Dkt. No. 2-1 at 15.  Plaintiffs further allege that the Municipal Defendants committed a number of non-discretionary procedural violations.  *See id.* at 15-17.  However, at worst, these actions constitute incorrect procedural actions by the Municipal Defendants, and certainly are not so "brutal and offensive to human dignity" as to rise to the level of a fundamental procedural irregularity.  Thus, Defendants' alleged violations of SEQRA are not arbitrary and outrageous.

Plaintiffs now argue that Mr. Kovalchik, the Town Planner, acted beyond his authority in allowing the Corporate Defendants to clear cut on Site Two.  *See* Dkt. No. 32 at 13-14.  Plaintiffs further argue that even if Mr. Kovalchik did have the authority to permit the clear cutting, he did not follow the proper procedure.  *See id.* at 16.  Defendants contend that no permit was needed in order to cut the trees and that the Corporate Defendants did not need to obtain permission from the Town.  *See* Dkt. No. 35 at 14-15.  Therefore, Defendants argue that there were no *ultra vires* actions as Plaintiffs allege and the alleged conduct is not constitutionally egregious.  *See id.*

In their complaint, Plaintiffs allege that the Town was aware of and authorized the clear cutting of the sites at issue.  *See* Dkt. No. 1 at ¶¶ 8, 112, 122, 125, 153, 172.  Noticeably absent, however, is any allegation that any town officer, including Mr. Kovalchik, engaged in any *ultra vires* acts.  In fact, Plaintiffs rely on Defendants' exhibits filed with their opposition to the motion for a preliminary injunction in order to advance their theory.  *See* Dkt. No. 32 at 9.  Prior the filing of those exhibits, Plaintiffs made no allegation that any individual town officer acted beyond the scope of their authority in permitting the clear cutting.  While Plaintiffs may argue that they only became aware of this information after the filing of their complaint, the information upon which they now rely is outside the scope of what the Court may consider in deciding a Rule 12(b)(6) motion.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).  Plaintiffs have not attempted to amend their complaint to include these allegations.  Looking at the facts stated on the face of the complaint, as the Court must, it is clear that Plaintiffs have not plausibly alleged that the Town engaged in arbitrary or outrageous conduct.

However, even if the Court were to credit Plaintiffs' new allegations against Mr. Kovalchik, this "argument fails because it confuses *ultra vires* action with action contrary to governing statutory provisions."  *Leder v. Am. Traffic Solutions, Inc.*, 630 Fed. Appx. 61, 62 (2d Cir. 2015).  Plaintiffs allege that Mr. Kovalchik disregarded the Town's Code and SEQRA's provisions which regulate the alteration of property under review.  *See* Dkt. No. 32 at 13-14, 17.  This is not an *ultra vires* act, which occurs when an official acts beyond the scope of his authority, but, rather, is alleged "action contrary to governing statutory provisions."  *Leder*, 630 Fed. Appx. at 62.  Further, as the Second Circuit has explained, "'substantive due process does not entitle federal courts to examine every alleged violation of state law, especially ones that, while perhaps vexatious, are more routine than egregious.'"  *Id.* at 63 (quotation omitted).  At worst, the

Municipal Defendants allowed the Corporate Defendants to clear cut portions of their property. While this certainly could be seen as vexatious given that the property was undergoing a SEQRA review, it is not the sort of conduct that shocks the conscience or is "truly brutal and offensive to human dignity."[9] *Lomardi*, 485 F.3d at 81 (quotation omitted).

Accordingly, Defendants' motion to dismiss is granted for these alternative reasons.

### 5. Corporate Defendants' Request for Attorneys' Fees

Finally, the Corporate Defendants have requested reasonable attorney's fees. *See* Dkt. No. 29-3 at 33. Specifically, the Corporate Defendants argue that Plaintiffs continued to litigate groundless and frivolous claims against them after it became clear that they were groundless. *See id.*

"Under 42 U.S.C. § 1988(b), in any action to enforce Section 1983, a district court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee

---

[9] While the conduct of the Municipal Defendants does not rise to the level of shocking the conscience, the Court cannot say the same for the conduct of the Corporate Defendants. As the Court has explained, and the parties have noted, there are no claims against the Corporate Defendants. However, the Court would be remiss if it did not express its concern regarding the Corporate Defendants' conduct. It is undisputed that the sites at issue were part of an ongoing environmental review process. Yet, the Corporate Defendants unilaterally decided to fell trees on multiple acres of land. At a pre-motion conference, the Court specifically asked "[w]hy did your client remove the trees while the process is still going on and [w]hen no final determination has been made?" *See* Dkt. No. 41 at 9. Their response was that they did so to "protect any potential habitat or an endangered or threatened species." *See id.* at 10. Counsel for the Corporate Defendants stated the following: "The New York State Department of Environmental Conservation regulations, when there's a bat habitat, protected bat habitat around, provide that any cutting of trees should be done before April 1 so that there is no possibility that the habitat could be impacted. There's seven miles away, according to DEC, there's a protected bat habitat which is outside of the DEC's protected area where they would actually regulate, and the DEC confirmed this *after the tree cutting was done*." *Id.* at 9 (emphasis added). The Court finds it hard to credit the felling of the trees to the Corporate Defendants' benevolence. Instead, it seems clear that the Corporate Defendants, in an effort to prevent any delay in their development of the property, cut the trees to prevent any potentially endangered or threatened species from making a home on the property. Nevertheless, as there are no claims against the Corporate Defendants, they cannot be required to answer for this distressing conduct in this action.

20

as part of the costs." *Miner v. Clinton County*, No. 06-CV-728, 2009 WL 2156969, *1 (N.D.N.Y. July 16, 2009) (quoting *Panetta v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006)) (internal quotation marks and other citations omitted).  However, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* (quoting *Panetta*, 460 F.3d at 399) (internal quotation marks and other quotation omitted).

The Corporate Defendants seek attorney's fees based on Plaintiffs' continued litigation of their CWA, ESA, and substantive due process claims, despite the fact that it became clear those claims were groundless early in the litigation.  *See* Dkt. No. 29-3 at 33.  Having only summarily denied that such fees should be granted in their initial response, the Court requested additional briefing on this issue from Plaintiffs.  In their opposition to the request for attorney's fees, Plaintiffs argue that joinder of the Corporate Defendants was necessary as they are indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 39 at 5-6.

Initially, the Court notes that Plaintiffs have stated that they did not bring claims pursuant to the CWA and the ESA since the Court's first conference with the parties.  *See* Dkt. No. 41 at 4. Plaintiffs' counsel stated that "they are not independent sources of causes of action," but that they fall "under the rubric of the due process argument."  *Id.*  However, the drafting of the complaint indicates the complete opposite.  Plaintiffs' complaint states "FIRST CAUSE OF ACTION: Defendants' clear cutting of Site No. 2 violated the Clean Water Act and New York's Environmental Conservation Law."  *See* Dkt. No. 1 at 18.  This section, citing provisions of the CWA, detail the alleged violation of that statute.  *See id.*  Plaintiffs' complaint then states "SECOND CAUSE OF ACTION: Defendants' clear cutting on Site No. 2 violated the Endangered Species Act."  *See id.* at 19.  Then, pages later, Plaintiffs' complaint states "FIFTH CAUSE OF

ACTION: Municipal defendants' actions have predetermined the outcome of its SEQRA review violating plaintiffs' rights of Due Process." *See id.* at 23.

If Plaintiffs' counsel never intended to bring separate causes of action under the CWA and ESA, as he has represented to the Court, perhaps in drafting the complaint he should have avoided labeling such allegations as separate causes of action.  Despite this error in drafting, the Court finds that Defendants have been on notice that Plaintiffs were not pursuing claims pursuant to the CWA and ESA since the initial conference with the Court.  Thus, the Corporate Defendants' request for attorney's fees is denied as it relates to alleged of violations of the CWA and ESA.

Before determining whether a party is indispensable for the purposes of a Rule 19 analysis, "the Court must first determine 'whether the person or entity is a necessary party under Rule 19(a).'"  *Anderson v. City of Columbus*, No. 15-CV-1030, 2017 WL 448970, *2 (S.D. Ohio Jan. 10, 2017) (quoting *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004)).  Rule 19 states that a party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Here, Plaintiffs essentially concede that they do not have any claims against the Corporate Defendants.  *See* Dkt. No. 39 at 5-6.  However, the relief sought includes a request for an injunction prohibiting the cutting of trees on the sites at issue until the SEQRA review process is

complete. *See* Dkt. No. 1 at 29.  If Plaintiffs' request to enjoin further tree cutting on the sites

owned by the Corporate Defendants was granted, the Corporate Defendants' interests could be

adversely affected.  Thus, there is an arguable basis to include the Corporate Defendants as

necessary parties to this action, despite the fact that there are no claims against them.  *See*

*Anderson*, 2017 WL 448970, at *2.  Accordingly, the Corporate Defendants' request for attorney's

fees is denied.

## IV. CONCLUSION

After careful review of the record, the parties' arguments, and the applicable law, the Court

hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 29) is **GRANTED**; and the Court

further

**ORDERS** that the Corporate Defendants' request for attorney's fees is **DENIED**; and the

Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 5, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge